**Opinion filed January 14, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00160-CV

_____

## IN THE INTEREST OF E.K. AND G.K., CHILDREN

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 9660-CX**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the parents of E.K. and G.K. The mother filed a notice of appeal. In two issues on appeal, she challenges the sufficiency of the evidence. We affirm.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2020). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

Here, after a bench trial, the trial court found that Appellant had committed one of the acts listed in Section 161.001(b)(1)—that found in subsection (O). Specifically, the trial court found by clear and convincing evidence that Appellant had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of their removal from Appellant for abuse or neglect. The trial court also found that termination of Appellant's parental rights would be in the best interest of the children. *See* FAM. § 161.001(b)(2).

Appellant requests that we apply a de novo standard of review to her challenges to the sufficiency of the evidence. We decline Appellant's invitation to review this case de novo. Instead, we will apply the well-recognized standards of review previously set out by the Texas Supreme Court. *See, e.g.*, *In re A.B.*, 437 S.W.3d 498, 502–03 (Tex. 2014); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *J.P.B.*, 180 S.W.3d at 573. To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *C.H.*, 89 S.W.3d at 25–26. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *A.B.*, 437 S.W.3d at 503 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

*Background Facts*

The record reflects that the Department became involved with the family in this case when E.K. was fifteen years old and G.K. was thirteen years old. At that time, the Department received an intake based upon E.K.'s "outcry" that she had been sexually abused by Appellant's boyfriend, who lived with Appellant and her daughters: E.K. and G.K. E.K. reported that she had told Appellant about the abuse but that Appellant did not believe her. E.K. and G.K. also reported that Appellant was physically abusive toward both E.K. and G.K. Appellant denied every allegation, including having a boyfriend and not believing her daughters.

Appellant would not speak to the Department's investigator at length, and Appellant was "dismissive" of the Department's concerns about the safety of E.K. and G.K. When the Department's investigator tried to discuss the children's allegations with Appellant, Appellant would always reply: "[N]o, no, that didn't happen; I don't know what you're talking about; my girls are fine." Appellant was not protective of E.K. and G.K., and she did not cooperate with the Department's efforts to limit her boyfriend's access to E.K. and G.K. When E.K. discussed the sexual abuse with Appellant, Appellant called her a liar and said that "the things that [E.K.] did were her own fault." And when G.K. mentioned having suicidal thoughts, Appellant responded that G.K. "should go kill herself because she shouldn't be having feelings like that." The investigator testified that Appellant did not have her children's best interest at heart and that Appellant had endangered both E.K. and G.K.

Appellant did not cooperate with the Department's efforts to institute a safety plan and alleviate the need for removal. Therefore, the children were removed from Appellant's care, and a family service plan was created for Appellant with Appellant's input. The trial court ordered Appellant to comply with each requirement of her service plan.

Appellant's participation in counseling was one of the requirements of her service plan. Appellant initially attended counseling on-and-off, but she quit going to counseling altogether in February 2020, approximately five months prior to the final hearing. Appellant had indicated that her work schedule interfered with counseling. However, counseling was available for Appellant to attend virtually or by phone, but she did not participate in either.

Additionally, Appellant failed to stay in contact with the Department and was unable to be located at the address that she had given to the Department as her residential address. Instead, another family—who was also involved with the

4

Department—lived at that address. Furthermore, Appellant continued to be in a relationship with the man that had sexually abused E.K.

At the time of trial, Appellant had not seen or spoken to E.K. or G.K. in a year. The children had not wanted to visit Appellant in person during that time and did not want to be reunified with Appellant. The children attempted to call Appellant about six months after they were removed from Appellant's care. A man answered Appellant's phone; the children thought that the man that answered Appellant's phone was the man that had raped E.K.

The Department's goal for the children was termination of the parents' parental rights and adoption by the foster parents, with whom the children had lived for exactly one year. During that time, the children had attended counseling, had learned good coping skills, and had overcome behaviors caused by the trauma to which they had been exposed prior to removal. The children were happy and well-adjusted and were doing very well in their placement. The children had a loving relationship with their foster parents and believed that they belonged in the foster parents' home with people who cared about them. E.K. and G.K. had expressed a desire to be adopted by the foster parents. The foster parents hoped to adopt the children and would fear for the children's safety if they were to be returned to Appellant's care. The Department and the foster mother testified that termination of Appellant's parental rights would be in the best interest of E.K. and G.K.

*Analysis*

In her first issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding under subsection (O). *See* FAM. § 61.001(b)(1)(O). The undisputed evidence at trial established that Appellant failed to comply with the provisions of her court-ordered family service plan. The record reflects that the trial court specifically ordered that Appellant shall, among other things, participate in counseling to address violence concerns, protective capacities,

5

anger, and any additional concerns identified during counseling sessions; maintain stable housing and notify the Department of any change in address and of any change of persons living in the home; provide proof of income; and permit home visits by the Department's caseworker.[1]

The evidence presented at the final hearing on termination reflects that Appellant did not comply with the requirements set forth above. One of the Department's conservatorship caseworkers specifically testified that Appellant did not participate in counseling as required, did not stay in contact with the Department, failed to keep the Department apprised of her address, and failed to provide proof of her employment. Furthermore, at the time of the final hearing, the children had been in the Department's care for well over nine months and had been removed from Appellant's care due to abuse or neglect. The Texas Supreme Court has held that the language "abuse or neglect of the child" as used in subsection (O) "necessarily includes the risks or threats of the environment in which the child is placed." *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013). In *E.C.R.*, the court determined that "placing the child's physical health or safety at substantial risk" is sufficient to support a finding of "abuse or neglect." *Id.* at 240. The evidence presented at trial—including evidence that Appellant's boyfriend had sexually abused E.K., that Appellant did not believe E.K.'s outcry, that Appellant continued to permit the abuser to have access to E.K. and G.K., and that Appellant suggested that G.K. should kill herself—constituted sufficient evidence from which the trial court could have determined by clear and convincing evidence that the children had been removed because of a substantial risk of abuse or neglect.

---

[1]*See In re N.G.*, 577 S.W.3d 230, 239 (Tex. 2019) (holding that court of appeals must address the specificity of the provisions of the trial court's order, which may include the service plan).

Furthermore, Appellant did not testify at trial and did not present evidence to prove by a preponderance of the evidence that she was unable to comply with the provisions of her service plan and that she had made a good faith effort to comply but had been unable to comply due to no fault of her own. *See* FAM. § 161.001(d) (providing that termination is not permitted pursuant to subsection (O) if the parent proves by a preponderance of the evidence that (1) the parent was unable to comply and (2) the parent made a good faith effort to comply and the failure to comply is not attributable to any fault of the parent); *see also In re Z.M.M.*, 577 S.W.3d 541, 542–43 (Tex. 2019) (requiring appellate courts to review a trial court's decision under Section 161.001(d) when addressing the sufficiency of the evidence to support a finding under Section 161.001(b)(1)(O)). Based upon our review of the record, we hold that the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(b)(1)(O). *See In re L.G.*, 596 S.W.3d 778, 780 (Tex. 2020) (upholding finding under subsection (O)). The trial court's finding is supported by clear and convincing evidence, and the trial court could reasonably have formed a firm belief or conviction as to the truth of its finding. We overrule Appellant's first issue.

In her second issue on appeal, Appellant challenges the sufficiency of the evidence to support the finding that termination of her parental rights was in the best interest of E.K. and G.K. We note that the trier of fact is the sole judge of the credibility of the witnesses at trial and that we are not at liberty to disturb the determinations of the trier of fact as long as those determinations are not unreasonable. *J.P.B.*, 180 S.W.3d at 573. We hold that, based on clear and convincing evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest of both E.K. and G.K. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the

7

children, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of Appellant and of the foster parents, the Department's plans for the children, Appellant's inability to provide a safe home for the children, the stability of the prospective adoptive parents' home, and Appellant's treatment of the children, we hold that the evidence is legally and factually sufficient to support the finding that termination of Appellant's parental rights is in the best interest of both E.K. and G.K. *See id.* We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the trial court's order of termination.


JOHN M. BAILEY

CHIEF JUSTICE


January 14, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[2]

Williams, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.